UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YOLANDA FRAGA-JIMENEZ, | |
| Petitioner, | Case No. 1:18-cv-00430-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ANDREW SAUL,[1] Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court is Yolanda Fraga-Jimenez's Petition for Review of the Respondent's denial of social security benefits, filed on October 9, 2018. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the decision of the Commissioner with an order to calculate and award benefits.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL AND FACTUAL HISTORY

On July 28, 2013, Petitioner protectively filed an application for Title II benefits for a period of disability beginning July 25, 2013, based upon physical impairments including systemic lupus erythematosus (lupus) and chronic migraines. This application was denied initially and on reconsideration, and a hearing was held on January 19, 2016, before Administrative Law Judge (ALJ) David Willis. After considering testimony from Petitioner and a vocational expert, ALJ Willis issued a decision on July 20, 2016, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which granted her request for review and remanded the claim on June 23, 2017, with specific instructions to update the record, consider obtaining evidence from a medical expert, further evaluate the opinion evidence, and reconsider the Residual Functional Capacity (RFC) determination.

ALJ Willis held a hearing on remand on October 24, 2017. After hearing testimony from Petitioner and a second vocational expert, ALJ Willis issued a decision on December 8, 2017, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request for review on August 28, 2018.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of Petitioner's disability onset date of July 25, 2013, she was 44 years of age. Petitioner has a high school education, and her prior work experience includes work as a Childcare Center Director.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of July 25, 2013. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's lupus, depressive disorder, post-traumatic stress disorder, and migraine headaches severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ considered Listings 14.02 (Systemic Lupus Erythematosus); 11.00 (Neurological Disorders); 12.04 (Depressive, bipolar and related disorders); and 12.15 (Trauma– and stressor–related disorders). The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairment. (AR 18-20.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform her past relevant work as a Childcare Center Director. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in

significant levels in the national economy, after considering the claimant's residual

functional capacity, age, education and work experience.

The ALJ determined Petitioner retained the RFC to perform light work, as defined

in 20 C.F.R. § 404.1567(b), with limitations. These limitations included the ability to sit,

stand, or walk 6 hours out of an 8-hour workday, provided she has the option to alternate

positions to sitting for 15 minutes, after 45 minutes of walking or standing, and allowing

for Petitioner to be off task up to 5% of an 8-hour workday. (AR 20.) In determining

Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be

expected to cause the symptoms she alleged, but that her statements about the intensity,

persistence, and limiting effects of her conditions were not entirely consistent with the

medical evidence and her daily activities. (AR 29.)

Based upon his evaluation of the record and the hypotheticals posed to the

vocational expert, the ALJ found Petitioner was able to perform work as a photocopying

machine operator, collator operator, and routing clerk, all of which constitute unskilled,

light work jobs available in significant numbers in the national economy. Consequently,

the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if

there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at steps three, four and five. Petitioner alleges the following errors: (1) failing to properly evaluate whether Petitioner's headaches meet, or are equivalent to, Listing 11.02; (2) failing to give clear and convincing reasons in support of discounting Petitioner's credibility; (3) giving improper weight to the medical opinion evidence; (4) failing to give reasons germane to each lay witness in support of discounting lay witness testimony; and (5) assigning an RFC that was not supported by the record.

The Court finds the ALJ erred at steps four and five, and that any one of the errors would support remand for an award of benefits. Central to the Court's decision is the ALJ's failure to consider the uncontroverted evidence in the record regarding Petitioner's excessive absenteeism, which would be work preclusive based upon the testimony of the vocational expert. (AR 139-140.) Therefore, the Court declines to address whether the ALJ properly evaluated Listing 11.02, finding it unnecessary to the Court's decision. The Court's analysis follows.

1.     **Credibility**

The ALJ is responsible for assessing credibility, resolving conflicts in medical testimony, and resolving ambiguities in the record. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ's evaluation of the intensity, persistence, and limiting effects of Petitioner's pain and fatigue was bifurcated. The first part related to Petitioner's headaches, and the second part related to Petitioner's fatigue caused by lupus. With respect to Petitioner's migraines, the ALJ discounted Petitioner's testimony on the grounds that her headache frequency improved from daily headaches to headaches "2 or

3 days per week" by June of 2013; "1-2 a week rather than daily" according to treatment records from September of 2015; and "twice per week" according to treatment records from April of 2016. (AR 23.)

Petitioner testified that her headaches "come on all of a sudden," or when she is tired. (AR 62.) The record is unrefuted that Petitioner sought continued treatment from her primary care providers and a neurologist as a result of the migraines, and she was prescribed abortive medications. When abortive drugs failed to alleviate her pain, Petitioner sought emergency room treatment, consisting of Toradol injections. (AR 23.) When she has a headache, symptoms could last all day, and to alleviate her symptoms, she will lie down in a dark, quiet room. (AR 62-63.) In addition to pain, the medical records indicate Petitioner suffers from photophobia, nausea, and vomiting when suffering from a migraine. (AR 543.) Petitioner was observed by her treating provider[2] on March 12, 2013, as in "moderate distress...sitting in a dark room...." (AR 543.) On January 17, 2013, her treatment provider noted she "missed work yesterday and today because of her migraines." (AR 544.)

Thus, while it is true that medical records reflect improvement in the frequency of Petitioner's migraines, the ALJ failed to explain how improvement from daily migraines to one or two each week is inconsistent with expected absenteeism due to weekly or bi-weekly migraines. The record is uncontroverted that Petitioner will miss work if she is

---

[2] Petitioner saw several medical providers for treatment of her headache symptoms.

experiencing a migraine.

Similarly, the ALJ relies on periods of improvement in Petitioner's lupus symptoms to discount her testimony that disabling fatigue prevents her from maintaining a full-time work schedule, and ignores the overwhelming evidence in the record that fatigue from lupus is chronic and disabling for Petitioner. (AR 24.) The record reflects Petitioner was diagnosed with lupus in 2009. (AR 879.) She sees Dr. Patrick Knibbe, a rheumatologist, on a regular basis as well as Janeen Jenkins, PA-C, at St. Luke's Rheumatology. Dr. Knibbe and PA-C Jenkins treated Petitioner for a number of symptoms related to lupus, including pain, swelling and aching in Petitioner's hands, upper and lower extremities, feet, ankles, knees, back, and neck. (AR 1638.) The record is replete with treatment records between 2011 and 2017 indicating Petitioner continuously suffers from fatigue as a result of lupus. She takes a number of medications, including Plaquenil, to treat her lupus, with varying success.

The periods of improvement the ALJ cited are illusory given the longitudinal record of Petitioner's symptoms. For example, the ALJ cites that Petitioner had an increase in lupus activity and symptoms in early 2014, which improved with treatment. (AR 24.) A review of the medical records relied upon indicate that, in February 2014, laboratory tests showed an increase in inflammation indicating increased lupus activity. (AR 673.) The records cited (Exhibit 17F) do not, however, show dramatic improvement. Rather, on May 8, 2014, the majority of Petitioner's labs were normal, with the level of inflammation having improved "a little." (AR 669.) Yet, despite a decrease in

inflammatory blood markers, Petitioner on May 8, 2014, complained of fatigue, pain, and discomfort in her legs and arms with a "pain level of 8 of 10….Severe headaches and fatigue continue." (AR 665.) At no time does Petitioner indicate to her medical care providers, nor is it reflected in the records, that she improved to the point of being symptom free, even when providers reported she was "doing ok." (AR 998.)[3]

One other faulty reason cited by the ALJ bears mention. The ALJ notes that Petitioner's treating physicians suggested Petitioner rest "every 2-3 hours during the day," which in the ALJ's opinion could be accommodated by "normal rest breaks during a light work shift." (AR 24.) However, the record reflects that, on October 17, 2017, Petitioner's treating providers recommended "avoiding stress as much as possible" and to rest "at least 30 minutes every 2 hours most days and to plan activities and outings in small increments to conserve energy." (AR 1638.) The Court cannot fathom how resting every two hours for "at least" thirty minutes can be accommodated during an eight-hour workday with two fifteen minute breaks and a one hour lunch.

Based upon the Court's review of the record as a whole, this is not a case where the evidence can support the ALJ's credibility finding. The Court finds the ALJ erred regarding his assessment of Petitioner's credibility based upon the entirety of the record.

---

[3] For instance, Melissa Knutson, D.O., recorded on May 26, 2015, that Petitioner was "doing ok." However, despite this notation, Petitioner reported "not feeling well. Very tired….[Fatigue] occurs daily. The problem is worsening. Symptom is aggravated by stress exertion/exercise….The patient denies relieving factors. Associated symptoms include joint pain and myalgia." (AR 998.) In other words, "doing ok" for Petitioner does not mean she is symptom free.

## 2. Lay Witness Testimony

Lori Clark, Petitioner's former supervisor, provided a statement dated April 11, 2014. (AR 449.) Ms. Clark noted Petitioner's long tenure at her position, which included over ten years as a teacher and more recently as a Site Coordinator with day-to-day responsibility of the Head Start site in Nyssa, Oregon. Ms. Clark described Petitioner's absenteeism as a result of her illness, which caused her to miss "more and more days of work," and to request accommodations, such as arriving late to work and reducing work hours from eight to six hours each day. Despite accommodations, Ms. Clark stated Petitioner continued to miss work. Petitioner was placed on protected medical leave, and had she not had accommodations, Petitioner would have been terminated from employment because of excessive absenteeism. Ms. Clark stated also that Petitioner was a "great employee," but because of migraines and fatigue, Petitioner struggled to focus "on tasks at hand." Ms. Clark stated she was supportive of Petitioner's request to resign her position so that she could "take care of herself more effectively."

The ALJ gave Ms. Clark's opinion "little weight," because it relied "mostly on subjective reports of the claimant's symptoms, is not based on medical or vocational expertise, and does not provide specific limitations (other than difficulty working the full amount of hours expected). (AR 22.)

The testimony of lay witnesses about their own observations regarding the claimant's impairments constitutes competent evidence that must be considered and evaluated by the Commissioner in the disability evaluation. *Robbins v. Soc. Sec. Admin.*,

466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness. *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *Stout v. Comm'r*, 454 F.3d at 1053 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis*, 236 F.3d at 511–12.

When rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F3d 1050, 1056 (9th Cir. 2006).

First, lack of medical or vocational training is not a germane reason for rejecting lay testimony. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (A lay person, though not a vocational or medical expert, was not disqualified from rendering an opinion); *Gutierrez v. Colvin*, 208 F.Supp.3d 1117, 1124-25 (E.D. Cal. Sept. 26, 2016)

(finding regulations specifically require consideration of "non-medical" sources, and rejecting supposed financial interest in a favorable adjudication and family bias as germane reasons for discrediting lay testimony), *cited in Sanderson v. Berryhill*, No. 1:16-CV-00242-CWD, 2017 WL 3974235, at *8 (D. Idaho Sept. 8, 2017).

Second, Ms. Clark's statements about the reduction in hours to accommodate Petitioner, and her excessive absenteeism related to her chronic conditions, are not based upon Petitioner's subjective complaints. Petitioner testified she regularly arrived late to work, left early, or missed work due to illness. (AR 114, 129.) Ms. Clark confirmed Petitioner was provided accommodations, which involved reduced hours, so she could perform the essential functions of her job. Nonetheless, Ms. Clark stated Petitioner's absenteeism was excessive. These statements are facts, and constitute Ms. Clark's independent observation of the effects of Petitioner's chronic conditions on work performance and attendance.

The vocational expert testified that an individual limited to unskilled light or sedentary work who is either off-task up to fifteen percent of an eight-hour workday on a sustained and consistent basis, or regularly absent from work more than one day each month, would be precluded from all work. (AR 139 – 140.) The ALJ acknowledges Ms. Clark's statement, noting Petitioner had difficulty working "the full amount of hours expected," and does not rebut the same. Yet, the ALJ fails to discuss the evidence regarding Petitioner's absenteeism anywhere in his written determination. As discussed below in the context of the Court's discussion of the physicians' opinions, Ms. Clark's

observations regarding Petitioner's actual absenteeism is consistent with the medical opinion evidence that Petitioner's impairments would result in excessive absences.

Excessive absenteeism is a specific limitation that would preclude all work at the unskilled light or sedentary level. Because the ALJ failed to provide germane reasons for rejecting competent lay testimony and did not rebut Ms. Clark's statements regarding Petitioner's absenteeism, the Court concludes the error was not harmless. The Court therefore finds substantial evidence does not support the ALJ's determination to give Ms. Clark's testimony little weight.

**3.      Physician Opinions**

Petitioner contends the ALJ erroneously rejected the opinions of Petitioner's treating providers, Dr. Knibbe and Janeen D. Jenkins, PA-C, because the ALJ did not properly weigh their opinions, and erroneously concluded the opinions were not supported by or consistent with other medical evidence. The Court agrees.

The Ninth Circuit Court of Appeals distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans*

*v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); 20 C.F.R. § 404.1527(c)(2).[4]

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Also, "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec.*

---

[4] The evaluation of opinion evidence is set forth in 20 C.F.R. § 404.1527(c)(2) for claims, such as Petitioner's, filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply. *See* 20 C.F.R. § 404.1527 (2019); 20 C.F.R. § 404.1520c (2019).

*Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the

physician's opinion include clinical findings from examinations, conflicting medical

opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

*Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871

(9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An

ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a

claimant's self-reports that have been property discounted as not credible. *Tommasetti v.

Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

A physician's assistant qualifies as an "other source." 20 C.F.R. §

404.1513(d)(1).[5] Other sources are qualified to provide evidence about "the severity of [a

claimant's] impairment(s) and how it affects [the claimant's] ability to work." *Garrison

v. Colvin*, 759 F.3d 995, 1013–14 (9th Cir. 2014). The ALJ may discount testimony from

these "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'"

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Lewis v. Apfel*, 236 F.3d

503, 511 (9th Cir. 2001)).

### A.  *Dr. Patrick Knibbe*

Dr. Knibbe, Petitioner's treating rheumatologist, provided a medical assessment of

her ability to do work-related activities (physical) dated May 7, 2016. (AR 1423 – 1426.)

At that time, Dr. Knibbe had been treating Petitioner for five years which, in his opinion,

---

[5] Although the regulations governing the evaluation of medical evidence were recently amended, the Court refers to the version effective September 3, 2013, to March 26, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

was sufficient to form a basis for his assessment. According to Dr. Knibbe, Petitioner would be limited to walking or standing a total of one hour in an 8-hour workday; sitting a total of two hours in an 8-hour workday; and carrying 10 pounds occasionally due to symptoms of weakness and arthritis in her knees, feet, hips, back, and hands. He indicated persistent fatigue and weakness would affect Petitioner's ability to sustain full time employment based upon his examination and laboratory findings. (AR 1426.) Dr. Knibbe was of the opinion Petitioner could regularly work two hours in an eight-hour workday, and would be absent, on average, ten days per month as a result of medical impairments or treatment. (AR 1423.)

The ALJ gave Dr. Knibbe's opinion "partial weight," finding that the degree of limitation was not supported by objective medical evidence or treatment records, and citing the consultative examination of Dr. Michal Sant, who opined Petitioner possessed normal muscle strength and range of motion. (AR 26.) The ALJ reasoned that Dr. Knibbe's check-box questionnaire did not provide narrative explanation or supporting detail, and did not rely on or reference any specific functional testing. Thus, the ALJ did not find Petitioner's ability to stand or walk to be as limited as Dr. Knibbe opined, and instead he concluded Petitioner retained the capacity for light work with some less significant limitations. (AR 26.)

The ALJ's conclusory statements do not refer to any specific medical records, nor does he explain why Dr. Sant's opinion, which was based solely upon a one-time consultative orthopedic examination, provides support for discounting Dr. Knibbe's

opinions. A close review of the medical evidence of record reveals no support for the

ALJ's conclusory statements. Dr. Knibbe assumed Petitioner's care on or about July 14,

2011, with follow up visits every two to four months thereafter. (AR 571 – 607; 610 –

617; 660 – 675; 697 – 704; 1159 - 1198.) On November 25, 2013, Dr. Knibbe notes

Petitioner's chief complaint as fatigue, with "increased pain in her bilateral wrists and

legs. Migraines have been twice weekly despite Topamax 100mg twice daily." (AR 611.)

Petitioner's care team at St. Luke's Rheumatology Clinic included Janeen Jenkins, PA-

C,[6] who treated Petitioner every two months under Dr. Knibbe's supervision between

August 20, 2014, and December 20, 2015. (AR 1159 – 1198.)

Between August 20, 2014, and December 20, 2015, examinations revealed stiff

and painful joints (AR 1197, 1175, 1166); a reported pain level of 9 out of 10 (AR 1195);

bloody stools along with abdominal discomfort (AR 1191); a prolonged sinus infection

during the month of January 2015 (AR 1187); a recommendation to engage in

programmed rest to avoid symptoms (AR 1186); inflammation and mild elevation in

antibodies indicative of a lupus flare reflected in laboratory test results (AR 1171); and

pain elicited upon examination, especially in the proximal large muscle groups, but also

across Petitioner's shoulders and calves (AR 1160).

Upon the Court's review, the treatment records during the period immediately

preceding the date of Dr. Knibbe's medical source opinion statement do not support the

---

[6] The Court discusses PA Jenkins' opinions in more detail later in this Memorandum.

ALJ's determination. Instead, these treatment notes consistently document Petitioner's complaints of pain and fatigue, and objective test results indicate the presence of inflammation indicative of active lupus symptoms.

Further, the ALJ gives no basis for crediting the opinion of Dr. Sant, an examining physician, over that of Dr. Knibbe, Petitioner's treating rheumatologist for five years. Dr. Sant, a specialist in physical medicine and rehabilitation, performed a consultative examination on May 6, 2016, limited to assessing Petitioner's range of motion, muscle bulk and tone, and reflexes. (AR 1427 – 1432.) Dr. Sant is not a specialist in rheumatology, and did not address Petitioner's limitations related to fatigue and pain, which in Dr. Knibbe's opinion result in absenteeism and the inability to sustain activity during a regular 8-hour workday. Dr. Sant's findings signal only that Petitioner exhibited full range of motion in all major joints, and that she had no muscle strength limitations. But Dr. Sant, having examined Petitioner one time, was not in a position to assess the effects of Petitioner's fatigue, pain, and other lupus symptoms (including migraines) on her ability to sustain activity during a regular 8-hour workday on a full-time basis.[7]

The ALJ's conclusory determination that Dr. Knibbe's opinion was contradicted by his treatment notes and the ALJ's reliance on Dr. Sant's opinion as evidence of Petitioner's capacity to sustain full-time employment are inapposite. Far from "setting out

---

[7] Petitioner argues also that the ALJ failed to properly assess Dr. Sant's opinion limiting Petitioner's ability to reach laterally. Pet. Brief at 15. (Dkt. 15.) The Court finds it unnecessary to address the ALJ's conclusions regarding Petitioner's ability to reach laterally in light of the Court's conclusion that the ALJ's errors with respect to Petitioner's symptoms of fatigue, pain, and migraines are sufficient to conclude the ALJ failed to properly weight Dr. Knibbe's opinion.

a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," *Magallanes*, 881 F.2d at 751 (quoting *Cotton*, 799 F.2d at 1408), the ALJ pointed to nothing in Dr. Knibbe's treatment notes (or elsewhere in the clinical record) that contradicted Dr. Knibbe's opinion.

### B.    *Janeen Jenkins, PA-C*

Physician's assistant Jenkins, who treated Petitioner under Dr. Knibbe's supervision at the St. Luke's Rheumatology Clinic, provided a medical assessment of ability to do work-related activities (physical) dated October 17, 2017, together with a narrative letter. In her opinion, Petitioner would be unable to sit, stand, or walk on a "consistent predictable basis to meet demands of any employment," and would be able to lift or carry items less than occasionally "due to grip and hand arthritis from lupus." (AR 1639 – 1645.) She indicated Petitioner's use of her hands and feet were severely limited due to intermittent swelling and pain related to lupus. Her narrative letter explained that, on Petitioner's most recent physical exam, Petitioner exhibited swelling and tenderness of joints in her hands and wrists, malar rash, and trigger thumb. (AR 1638.)

P.A. Jenkins stated also that Petitioner's lupus had been difficult to treat due to side effects or adverse reactions to medications. As a result, Jenkins explained that Petitioner suffered from pain, fatigue, joint swelling, rash, and malaise from sun exposure, as well as poor focus, decreased memory, insomnia, poor grip, and pleuritic chest pain. Jenkins indicated that she and Dr. Knibbe had advised Petitioner to avoid stress to avert more severe lupus flares; rest at least 30 minutes every two hours most

days; and plan activities and outings in small increments to conserve energy. The goal of Petitioner's treatment was to help manage symptoms so Petitioner could "carry out ADLs independently most of the time and participate in family and social life as much as possible." (AR 1638.)

The ALJ gave P.A. Jenkins' opinion "partial weight," because Petitioner's examination records, treatment history, and ability to continue with light daily tasks supported the capacity for a reduced range of light work. (AR 28.) According to the ALJ, Petitioner's lupus was "managed successfully" based upon the longitudinal record. (AR 28.)

The Court finds no support for the ALJ's conclusion. P.A. Jenkins' own treatment records in the months prior to the date of her medical source statement reflect Petitioner suffered from myofascial pain, decreased grip strength of the right hand, and chronic muscle aches and pain with little relief from medication. (Treatment Notes, March 7, 2016, AR 1565.) At Petitioner's March 7, 2016 office visit, Petitioner reported lupus flares since her last visit on December 11, 2015, pain in her ankles and wrists, and the inability to exercise.[8] (AR 1565.) Physical examination findings included tender wrists, ankles, feet, shoulders and metacarpophalangeal joints (abbreviated in the record as "MCPs"). (AR 1567.)

---

[8] The Court notes that the only evidence in the record of any form of exercise is range of motion exercises and stretches prescribed by a physical therapist, as reflected in treatment records from St. Luke's Rehabilitation, between March 5, 2015, and January 11, 2016. (AR 1379 – 1421.)

On June 22, 2016, Jenkins noted lupus activity was present, due to positive ANA[9] test results, arthritis, and malar rash. (AR 1570.) She noted also that Petitioner had been "intolerant or had adverse reaction to azathioprine, CellCept." (AR 1570.) Petitioner reported a "major flare" at the end of May. (AR 1571.) As for exercise, Petitioner reported mainly "around the house activity but has to rest frequently." (AR 1571.) Physical exam findings included a rash and malar erythema on Petitioner's chest. Lab tests results from June 22, 2016, confirmed inflammation, indicative of active lupus. (AR 1577.)

On August 22, 2016, Petitioner's physical examination findings included tender wrists, MCP's, proximal IP joints (abbreviated as "PIPs"), ankles, and metatarsophalangeal joints (abbreviated as "MTPs"). (AR 1589.) At that time, P.A. Jenkins and Dr. Knibbe were evaluating Petitioner for Benlysta therapy.[10] (AR 1586.) At her next appointment with Jenkins on February 2, 2017, the majority of Petitioner's laboratory tests revealed no significant abnormalities except for a low vitamin D level. (AR 1602 - 1603.) On June 1, 2017, Petitioner reported fatigue as her chief complaint.

---

[9] Antinuclear Antibody (ANA) is an "antibody showing an affinity for nuclear antigens including DNA and found in the serum of a high proportion of patients with systemic lupus erythematosus, rheumatoid arthritis, and certain collagen diseases, and in some of their healthy relatives; as well as about 1% of otherwise healthy people. Different antinuclear antibodies generate distinctive patterns on immunofluorescence staining tests. These patterns have clinical relevance and reflect which nuclear constituents (autoantigens) are generative specific antibody responses." 47140 antinuclear antibody (ANA), STEDMANS MEDICAL DICTIONARY 47140.

[10] BENLYSTA is a prescription medicine for patients with active systemic lupus erythematosus (SLE or lupus) receiving other lupus medicines. It is given intravenously or via an autoinjector patients can self-inject. www.benlysta.com (last visited March 10, 2020.)

(AR 1611.) Laboratory results were again abnormal, with a high C-reactive protein level noted.[11] (AR 1614 – 1620.)

Petitioner's treatment records precipitating Jenkins' medical source statement show continued treatment every two months for lupus.[12] Throughout this period, Petitioner complained of pain and fatigue, which were reflected in physical examination findings and laboratory test results. The ALJ failed to discuss these findings, or explain why they were not indicative of active disease and supportive of Jenkins' opinions given that they were based upon a recent treatment history of over one year. The ALJ offered no meaningful explanation to support his conclusion that Jenkins' opinion was not supported by her examination records and treatment history, nor did he explain the rationale for his determination that Petitioner's lupus was managed successfully. Upon review, the treatment records instead show that, despite treatment, Petitioner's lupus continued to manifest itself with symptoms of pain and fatigue.

The Court therefore finds the ALJ's conclusion, which does not refer to any specific records, cannot be affirmed in light of the Court's review indicating substantial evidence to the contrary.

---

[11] A high C-reactive protein level reflects the presence of a "β-globulin found in the serum of various people with certain inflammatory, degenerative, and neoplastic diseases." 729670 C-reactive protein (CRP), STEDMANS MEDICAL DICTIONARY 729670

[12] The record contains earlier treatment notes from St. Luke's rheumatology. (AR 661.) However, the records discussed above were from the year prior to Jenkins' medical source statement.

**MEMORANDUM DECISION AND ORDER - 24**

## 4. Residual Functional Capacity

Petitioner next argues that the ALJ's RFC finding is not supported by substantial evidence in the record. A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id*. To properly ascertain a claimant's RFC, an ALJ must therefore assess Petitioner's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). These include mental limitations like the effects of depression, fatigue, pain, tenderness, numbness and muscle spasms.

Because the ALJ did not provide clear and convincing reasons for not including Petitioner's chronic pain symptoms, fatigue, and weekly absences due to migraines in his assessment of Petitioner's RFC, substantial evidence does not support the ALJ's RFC assessment. Nor does substantial evidence support the ALJ's step-five determination, because it was based on this incomplete RFC assessment. *Ligenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)) ("Because ... the ALJ had no clear or convincing reasons for rejecting [claimant's

allegations of persistent disabling pain], claimant's pain should have formed a part of the ALJ's question to the expert.").

## 5.    Remand

Having found reversible error in the ALJ's decision, most pertinent finding that the ALJ improperly discredited Petitioner's testimony, lay witness Clark's observations, and the treating providers' opinions, the Court now addresses the question of whether to remand for further administrative proceedings or for an award of benefits. Petitioner argues a remand for an award of benefits is appropriate here.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175–78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether the remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id*. at 1179–81.

The Court may remand for an award of benefits only if three conditions are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability

can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

With regard to the first factor, for the reasons discussed herein, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Knibbe's opinion, as well as the opinion of Janeen Jenkins, PA-C. Accordingly, the Court credits the opinions as a matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Similarly, the ALJ's evaluation of Petitioner's credibility was legally incorrect. And last, the ALJ's decision to give lay witness testimony provided by Ms. Clark, Petitioner's supervisor, little weight was legally incorrect. Consequently, the Court credits this evidence as true. *Benecke*, 379 F.3d at 594.

Turning to the other factors, there are no outstanding issues to be resolved before a determination of disability can be made. There are numerous medical reports in the record documenting Petitioner's lupus and migraine symptoms. The ALJ failed to explain how a claimant suffering from at least one migraine each week, along with constant fatigue, joint pain, and swelling (synovitis) of her wrists, hands, ankles, and feet, and whose care providers recommended rest of at least 30 minutes every two hours, could sustain competitive employment, without excessive breaks and absences and significant off-task performance. The Appeals Council remanded this matter once for the ALJ to collect additional evidence and conduct a second hearing. Petitioner and a second vocational expert testified before the ALJ at the hearing upon remand, and the ALJ

deemed the record sufficiently complete to enable him to render a decision.

If the improperly discredited evidence is credited as true, it is clear the ALJ would be required to find Petitioner disabled on remand. The Court's conclusion follows directly from its analysis of the ALJ's errors and the strength of the improperly discredited evidence, which the Court credits as true: a treating physician and a treating physician's assistant with a lengthy treatment history; as well as Petitioner's testimony about her disabling impairments and lay witness testimony about the effect of Petitioner's chronic impairments upon job performance. Further, the vocational expert testified that, if a claimant was limited to unskilled light or sedentary work, and was absent more than one day each month, off task 15% of every workday, or both, competitive employment would be precluded.

Respondent's arguments to the contrary are unavailing. Other than offering bare statements of the legal standards applicable upon review, Respondent cites no evidence to support a contrary finding. A remand for calculation and award of benefits is therefore required. *See Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014) (applying credit as true rule).

## CONCLUSION

Based upon the foregoing, the Court will grant Petitioner's request for review, and remand for an award of benefits.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)      This action shall be **REMANDED** to the Commissioner for a calculation and award of benefits.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: March 16, 2020

Honorable Candy W. Dale
United States Magistrate Judge